AMIRA JACKMON (CA STATE BAR NO. 215280)
2342 Shattuck Avenue #816
Berkeley, CA  94704
Telephone:    510-868-0638
Facsimile:      866-822-8500
amira@jackmonlaw.com

Attorney for Plaintiff CMC Food Services LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CMC Food Services LLC,<br><br>　　　*Plaintiff*,<br><br>v.<br><br>City of Oakland, California, acting by and through its Board of Port Commissioners<br><br>　　　*Defendant*. | Case No.  14-3871<br><br>**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL**<br><br>---<br><br>Action filed: August 26, 2014<br>Trial date: Not set |

Plaintiff CMC Food Services LLC ("CMC") complains for damages and declaratory relief against the City of Oakland, acting by and through its Board of Port Commissioners (the "Port"), as follows:

### PARTIES AND JURISDICTION

1.　　Plaintiff CMC is a California limited liability corporation in the business of food service operations and management with its principal place of business in Oakland, California.

2.　　Defendant, the Port, is a department of the City of Oakland, a municipal

Complaint for Damages and
Declaratory Relief　　　　　　　　　　1

corporation and charter city within the State of California.

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1337 inasmuch as plaintiff's complaint is based on claims arising under the laws of the United States, namely the National Labor Relations Act, 29 U.S.C. §§ 158 and 187 and the United States Constitution under 42 U.S.C. § 1983.

4. Venue is proper because Plaintiff and all defendants are located in or have transacted business in this judicial district. The events as alleged herein occurred in this judicial district. Venue is proper under 28 U.S.C. § 1391 (b).

5. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) in that this is the judicial district in which a substantial part of the events giving rise to the claim occurred and, for purposes of venue, the Defendant is deemed to reside in this judicial district.

## STATEMENT OF FACTS

6. The Port, acting through its Board of Port Commissioners (the "Port Board"), operates the Oakland International Airport (the "Airport"). The Port contracts with a prime concessionaire, Host International, Inc. ("Host") to improve and operate the food and beverage, retail and duty-free concessions at the Airport. Host, in turn, subleases space to a number of small concession operators, including CMC. Pursuant to a Sublease with Host, CMC operates a Jamba Juice restaurant and a Gordon Biersch bar at the Airport.

7. Since 2012, the Port has carried on a pattern and practice of coercive discrimination and intimidation against small, locally owned businesses at the Airport including by applying its living wage laws and regulations illegally against these small businesses in an effort to curry favor with Unite Here Local 2850 ("Unite Here") a labor organization representing approximately 200 fast food and retail employees of Host at the Airport. The Port's ultimate goal is to force these small, locally owned concessions to enter into collective bargaining agreements

with Unite Here regardless of the desires of the employees of the concessionaires, and in derogation of employer rights protected by the NLRA.

Union Organizing Activity Begins

8. Host and Unite Here were parties to a collective bargaining agreement (CBA) effective October 17, 2008 through July 1, 2012. In early 2012, Host and Unite Here began negotiating a new collective bargaining agreement. CMC is informed and believes that a material point of contention between Host and Unite Here with regard to the new CBA is whether the employees of Host's subtenants under the Permit (the "Subtenants"), including employees of CMC, will be represented in collective bargaining by Unite Here.

9. In early 2012, representatives of Unite Here began organizing certain CMC employees, along with employees of other Subtenants, to become Unite Here members. As part of this organizing activity, certain CMC employees and Unite Here representatives demanded that CMC enter into a "labor peace" agreement with Unite Here.

10. In response to these demands, CMC proposed a "labor peace" agreement which provides for a secret ballot election conducted by the National Labor Relations Board (NLRB) to determine whether CMC employees desired to be represented by Unite Here. Unite Here rejected CMC's proposed "labor peace" agreement and demanded that CMC agree to use a "card check" procedure to determine whether CMC employees desired Unite Here representation. Under the NLRA, employers have a protected right to reject card checks and insist on NLRB supervised secret ballot elections.

11. A "card check" procedure makes the employees' union position public, unlike a private, NLRB supervised secret ballot election. Using a card check procedure, a labor union can identify, target and pressure employees in an effort to convince them to "vote" in favor of union representation by signing a card.

Complaint for Damages and Declaratory Relief - 3 -

12. In 2009, prior to CMC's execution of its sublease, Unite Here had sent CMC a proposed memorandum of understanding which contained card check and other commonplace neutrality provisions, such as that CMC provide Unite Here access on work premises to its employees and home contact information for its employees, and that CMC not make any statements that directly or indirectly state or imply any opposition to CMC employees' selection of Unite Here as a collective bargaining agent.

13. CMC never responded or agreed to Unite Here's proposed memorandum of understanding.

14. Similarly, in 2012, CMC refused to enter into a "labor peace" agreement with Unite Here that included a card check provision. Instead, CMC was, at all times, willing to agree to a "labor peace" agreement that provides for a secret ballot election conducted by the NLRB.

15. In and around June 2012, the Port began to increase its pressure on CMC to enter into a "labor peace" agreement with Unite Here. Port staff repeatedly held meetings with CMC encouraging CMC to enter into a "labor peace" agreement containing a card check procedure. Port Board member Bryan Parker called CMC encouraging CMC to contact Wei-Ling Huber, President of Unite Here, to negotiate a deal with Unite Here that included card check.

16. At the Port's request, CMC provided its financial statements to the Port and to Host showing that, based on CMC's then-current revenues, the cost of unionization could not be absorbed by CMC without a substantial financial loss. The Port offered CMC a 9% reduction in its rent and other incentives in exchange for CMC entering into a "labor peace" agreement with a card check provision.

17. After CMC did not agree to a "labor peace" agreement with a card check provision, in June 2012, Unite Here called for a boycott of CMC's Jamba Juice restaurant along with the restaurants of other Subtenants.

Complaint for Damages and
Declaratory Relief - 4 -

18. The publicly stated reason for the boycott was the Subtenants' alleged violation of the Living Wage Laws. But the true reason for the boycott can be found on Unite Here's website which explains that none of the targets of the boycott agreed to sign card check neutrality agreements.

19. On its website, Unite Here described how other Airport tenants signed such card check neutrality agreements with Unite Here, which resulted in unionization for three of those companies.

20. Unite Here's own words make clear that the price of "labor peace" at the Oakland International Airport is a card check procedure and a waiver of an employer's federally protected right under the NLRA to insist on a secret ballot election supervised by the NLRB.

21. Since then, Unite Here and its supporters have harassed CMC owners and have staged repeated strikes against CMC's business.

22. The Port has assisted Unite Here with its organizing efforts. On June 27, 2012, CMC's Jamba Juice restaurant was over-run by 15-20 agents of Unite Here. These union agents gathered inside the sterile area of Terminal 2 in the Airport. These union agents went concession to concession intimidating and harassing managers and supervisors of the Terminal 2 food court restaurants. The union agents interrupted CMC's business operations, including by falsely accusing the managers and supervisors of cutting new employees' hours.

23. This action took place with the permission of the Port in direct violation of Article 9.0 of the Rules and Regulations for Oakland International Airport regarding Religious, Charitable and Political Activities.

24. In July 2012, with the assistance of Unite Here, employees of CMC filed claims with the Port alleging violations of the Living Wage Law. Subsequently, CMC's employee Diamond Ford filed a claim alleging that she was retaliated against for filing the Living Wage

Complaint for Damages and Declaratory Relief - 5 -

violation claim.

25. Rather than finding these claims to be meritless, as they were legally required to do due to CMC's status as a small business, the Port again attempted to coerce CMC into a "labor peace" agreement with Unite Here by entertaining the Living Wage complaints and subjecting CMC to a year-long unauthorized administrative enforcement process, attorney's fees and costs.

Port Investigation and Enforcement Action

26. In its efforts to appease Unite Here and deprive CMC of its rights under the NLRA, the Port conducted a lengthy investigation into the employee Living Wage complaints. Not only was the Port's process biased but the whole administrative enforcement mechanism was unauthorized.

27. Beginning in January 2013, after an investigation that never included an investigation into the number of CMC's employees, the Port issued reports finding that: (a) CMC violated the PTO provisions of the Port LWO; (b) failed to provide its employees notice of their rights under Oakland City Charter Section 728; and (c) retaliated against employee Diamond Ford for filing a Living Wage complaint. The Port demanded correction of the alleged violations and threatened imposition of a fine of $26,000 per employee for failure to do so within 30 days.

28. The Port's findings were based on a provision of the Permit between Host and the Port in which Host agreed to "provide or cause to be provided" the same level of benefits required under the Living Wage Law to all employees of Host's Subtenants regardless of the size of the Subtenant's workforce.

29. On January 15, 2013, CMC filed an appeal of the Port's decision. CMC argued that it employed fewer than 20 employees and, therefore, was exempt from the PTO provisions of the Port LWO and the notice requirements of Section 728, and that an attempt to enforce these requirements against them was contrary to the Charter and, therefore, void and unenforceable.

Complaint for Damages and
Declaratory Relief - 6 -

30. On March 13, 2013, the Port, acting through its Port Attorney, issued an opinion determining that (1) as a matter of law, CMC was subject to the Living Wage Law and that such decision was final and not subject to appeal and (2) the portion of CMC's appeal related to the factual question whether CMC retaliated against Diamond Ford would be heard by an administrative hearing officer.

31. On April 10, 2013, an administrative hearing was held. The Port refused the request of CMC for a neutral third party hearing officer and, instead, unilaterally selected its own employee, Port Secretary John Betterton, as hearing officer. Not surprisingly, on April 18, 2013, Betterton upheld all of the prior Port decisions and further ordered that CMC reinstate Diamond Ford to her former position.

Alameda County Superior Court Decision

32. Because of the Port's unlawful and coercive actions, CMC was forced to incur additional attorney's fees and costs to challenge the Port's findings. On June 25, 2013, CMC filed a petition for writ of mandate and petition for writ of administrative mandate in the Alameda County Superior Court Case No. RG13685134. Subsequently, the Port filed a cross-complaint against CMC (the "Complaint") for breach of contract, among other claims.

33. CMC demurred to the Port's Complaint and, on February 7, 2014, Judge Evelio Grillo sustained the demur, in part, holding that the Port's enforcement of the Living Wage Law against Subtenants with 20 or fewer employees pursuant to the Permit violates the City Charter.

34. In his opinion, Judge Grillo held "as a matter of law that the Permit and subleases entered into pursuant to Ordinances 3666 and 3719 and Resolution 6091 conflict with Charter section 728 and are void to the extent of the conflict….The Permit is manifestly in conflict with the Charter to the extent the Permit requires small businesses to comply with the Living Wage requirements…[T]he Living Wage contract requirements in the CMC Foods and Grewal contracts

Complaint for Damages and Declaratory Relief - 7 -

that are directly contrary to Charter 728 are void as against public policy."

35. The Port was granted leave to amend its Complaint. Even knowing that CMC employed fewer than 21 employees, the Port amended its Complaint to allege that CMC did not qualify for the exemption. Thus the Port continues to damage and coerce CMC by its refusal to abide by the law.

Port's Subsequent Retaliatory Action Against CMC

36. On February 21, 2014, the Port filed a First Amended Complaint in Case No. RG13685134. Among other causes of action, the Port is seeking reformation or voidance of the CMC Sublease even though the Alameda County Superior Court has determined that the Permit provision is illegal and void.

37. On or about April 2014, CMC was contacted by the Port to discuss the Port Board's planned adoption of a resolution (the "Labor Peace Resolution") that would require CMC and other Subtenants to enter into a "labor peace" agreement with one or more "labor organizations that represent or are seeking to represent concession employees at the subject concessions."

38. The agenda report related to the adoption of the resolution states that it "is intended to be forward-looking, and will apply to all new concession opportunities and to existing Concessionaires when their contracts with the Port are amended…"

39. The Port Board adopted the Labor Peace Resolution with knowledge that Unite Here is demanding that a card check provision must be an essential term of any "labor peace" agreement acceptable to the union..

40. The Port passed this resolution with the intention to harm CMC by forcing CMC into a "labor peace" agreement with a card check provision in the event that the Sublease is terminated or amended as a result of court action in Case No. RG13685134.

Complaint for Damages and
Declaratory Relief - 8 -

41. Further, the Port Board adopted the Labor Peace Resolution with knowledge that if CMC is forced to waive its rights under the National Labor Relations Act, CMC will be unable to stay in business at the Airport.

42. The Port Board had full knowledge that CMC intended to continue its operations at the Airport through the end of its current lease and to seek renewal of its lease at the end of its current term and that a requirement to enter into a "labor peace" agreement with a card check provision prior to or at the end of the current term will result in CMC's inability to continue operating at the Oakland Airport.

FIRST CAUSE OF ACTION
(VIOLATION OF CIVIL RIGHTS — 42 U.S.C. § 1983)

43. CMC refers to and realleges paragraphs 1-42 and by this reference incorporates those paragraphs as though fully set forth at length.

44. The Port has adopted an express and implied policy designed to coerce CMC into accepting a neutrality agreement/card check process to determine Unite Here's representation of CMC employees. The Port has used the same coercive customs and tactics toward other small businesses at the Airport. These coercive acts were undertaken by the Port Board and Port Commissioner Parker, individuals with final policymaking authority, all with the intent of forcing CMC to waive legal rights – the right to demand a secret ballot election supervised by the NLRB – that are afforded to it under the NLRA.

45. Additionally, the Port has conspired, and is acting in concert with Unite Here, to coerce CMC and its employees to accept Unite Here representation of CMC's employees without a secret ballot election conducted by the NLRB, and the Port has committed overt acts in furtherance of that conspiracy. This conspiracy to violate CMC's federally protected NLRA rights violates 42 U.S.C. § 1983 and has caused and continues to cause damage to CMC.

46. All of these actions by the Port were undertaken in an effort to assure that CMC's

Complaint for Damages and
Declaratory Relief
- 9 -

employees would be represented in collective bargaining by Unite Here no matter their true representational desires.

47. This conduct violates CMC's federally protected rights under the National Labor Relations Act to negotiate with its employees free of outside interference or coercion and to have the process for determining union representation decided in the manner designated by the NLRA. This coercive conduct was undertaken by the Port under color of state law in violation of 42 U.S.C. § 1983 and has caused and continues to cause damage to CMC.

## SECOND CAUSE OF ACTION
### (DECLARATORY RELIEF—Code Civ. Proc. § 1060)

48. CMC refers to and realleges paragraphs 1-42 and by this reference incorporates those paragraphs as though fully set forth at length.

49. An actual controversy exists between CMC and the Port as to whether the Port may lawfully coerce CMC to enter into a labor peace agreement with Unite Here when all parties acknowledge that any such agreement will require a card check procedure. CMC requests a judicial determination that the Port lacks authority to take overt or covert acts to compel CMC to enter into a labor peace agreement, including by illegally enforcing the Living Wage Laws against CMC, by illegally forcing CMC through an unauthorized administrative enforcement process and by adopting the Labor Peace Resolution, under circumstances where CMC will be denied an opportunity to exercise its federally protected right to a representation election before the NLRB.

50. These determinations are necessary and proper because the Port is attempting, through its action for reformation in Case No. RG13685134, to force an amendment of the Sublease and thereby force CMC to enter into a labor peace agreement requiring a neutrality agreement/card check procedure. This will force CMC into the untenable position of either waiving its right to a formal representation election conducted by the NLRB or being denied the

opportunity to execute a new or amended sublease. In either case, CMC will be forced out of its business at the Airport as a result of the Port's coercive actions in support of Unite Here. A judicial declaration is necessary and appropriate at this time under the circumstances so that CMC may ascertain its rights and obligations under its Sublease.

51. Without such a judicial determination, CMC has been, is now and will continue to be damaged.

### THIRD CAUSE OF ACTION
### (TORT OF ANOTHER)

52. CMC refers to and realleges paragraphs 1-42 and by this reference incorporates those paragraphs as though fully set forth at length.

53. It is well settled law in California that one who through the tort of another has been required to act in the protection of his or her interests, by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorneys' fees and other expenditures thereby suffered or incurred in the earlier action.

54. As a proximate result of the Port's unlawful conduct, CMC was and is incurring attorneys' fees and costs to protect its interests in defending against the unlawful administrative enforcement action and Case No. RG13685134.

55. CMC did not cause any harm to the Port. However, CMC was and is being forced to defend against the Living Wage claims of its employees due to the Port's wrongful acts.

56. Under the tort of another doctrine, CMC is entitled to recover reasonable compensation for loss of time, attorneys' fees and costs that it suffered in defending its rights as a proximate result of the Port's wrongful conduct.

57. CMC is informed and believes and, upon that basis alleges, that the Port's and Unite Here's conduct is malicious, oppressive or fraudulent, and was committed with conscious

Complaint for Damages and
Declaratory Relief - 11 -

disregard of CMC's rights.  CMC is therefore entitled to an award of exemplary damages against the Port in an amount subject to proof at trial.

## FOURTH CAUSE OF ACTION
### (TITLE VI, 42 U.S.C. § 2000d )

58. CMC refers to and realleges paragraphs 1-42 and by this reference incorporates those paragraphs as though fully set forth at length.

59. Title VI, 42 U.S.C. § 2000d et seq., prohibits discrimination on the basis of race, color, and national origin in programs and activities receiving federal financial assistance.  The Port receives such assistance and is bound by its provisions.

60. By engaging in the conduct described herein, the Port has discriminated against CMC and all other DBEs by forcing them to comply with the Port's LWO despite having fewer than 20 employees.  This action taken by the Port has a disparate impact on minority owned businesses at the Port.

## PRAYER FOR RELIEF

WHEREFORE, CMC respectfully prays that the Court, after a trial by jury, enter judgment against the Port as follows:

1. For damages pursuant to 42 U.S.C. § 1983;

2. For declaratory and injunctive relief;

3. For all costs and attorneys' fees as allowed by 42 U.S.C. § 1988; and

4. For such other relief as the Court considers just and proper.

Dated: August 26, 2014

AMIRA JACKMON, ATTORNEY AT LAW

_[signature]_

Attorney for Plaintiff CMC Food Services LLC

Complaint for Damages and Declaratory Relief

- 13 -

VERIFICATION

I, Joseph Cook, the undersigned, says:

I am the President of Operations of CMC Food Services LLC.  I have read the above COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF and I am familiar with its contents. I am informed and believe that the matters stated therein are true and on that basis verify that the matters stated therein are true.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct and that this verification is executed on August 26, 2014, in Berkeley, California.

_____
JOSEPH COOK